**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

CHRISTOPHER BARBERA,

                    Plaintiff,

                                            Case No. 8:14-cv-2880-T-JRK

vs.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                    Defendant.
_____/

## OPINION AND ORDER[1]

### I.  Status

Christopher Barbera ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying his claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is a result of "scoliosis and spinal problems," "left knee," and "anxiety." Transcript of Administrative Proceedings (Doc. No. 10; "Tr." or "administrative transcript"), filed February 10, 2015, at 229 (emphasis and capitalization omitted).  On March 10, 2011, Plaintiff protectively filed an application for DIB, alleging an onset disability date of February 25, 2011.  Tr. at 151-52.  Plaintiff's "protective filing date" is listed elsewhere in the administrative transcript as March 7, 2011.  See Tr. at 26, 78-80, 268.  Plaintiff's application was denied initially, see Tr. at 78, 91-96, and upon reconsideration, see Tr. at 79, 80-90, 98-100.

---

[1]     The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 16), filed May 8, 2015; Reference Order (Doc. No. 17), entered on the same date.

On November 8, 2012, an Administrative Law Judge ("ALJ") held a hearing during which the ALJ heard testimony from Plaintiff, who was represented by counsel. Tr. at 40-77. On April 26, 2013, the ALJ issued a Decision finding Plaintiff not disabled and denying Plaintiff's claim. Tr. at 26-34. Plaintiff then requested review by the Appeals Council, Tr. at 15, and submitted evidence to the Council in the form of a brief authored by his attorney representative and some additional medical evidence. Tr. at 6-8; see Tr. at 15-22 (brief), 9-14 (medical records of Fawcett Memorial Hospital). On October 9, 2014, the Appeals Council denied Plaintiff's request for review, Tr. at 1-4, thereby making the ALJ's Decision the final decision of the Commissioner.  On November 18, 2014, Plaintiff commenced this action under 42 U.S.C. § 405(g), by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff raises two issues on appeal:

[Whether t]he Commissioner failed to articulate good cause for not crediting the opinions and findings of Dr. [Pedro] Casanova, [Plaintiff's] treating internal medicine specialist.

[Whether d]espite objective evidence of left arm atrophy and cervical radiculopathy, the Commissioner erred in failing to find that [Plaintiff] suffered from upper extremity limitations and also improperly failed to meaningfully consider the impact of [Plaintiff's] pain and other symptoms on mental and physical functioning.

Pl.'s Brief (Doc. No. 15; "Pl.'s Br."), filed May 7, 2015, at 1, 8-21.  Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 19; "Def.'s Mem.") on July 14, 2015.  After a thorough review of the entire record and the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be affirmed for the reasons stated herein.

## II.  The ALJ's Decision

When determining whether an individual is disabled,[2] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry.  See Tr. at 28-34.  At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since February 25, 2011, the alleged onset date."  Tr. at 28 (emphasis and citation omitted).  At step two, the ALJ found that Plaintiff "has the following severe impairments: lumbar degenerative disc disease, cervical degenerative disc disease." Tr. at 28 (emphasis and citation omitted).   At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 31 (emphasis and citation omitted).

---

[2]     "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The ALJ determined that Plaintiff has the residual functional capacity ("RFC") "to perform the full range of light work." Tr. at 31 (emphasis omitted).  At step four, the ALJ found that Plaintiff is "capable of performing past relevant work in real estate . . [as] [t]his work does not require the performance of work-related activities precluded by [Plaintiff's RFC]." Tr. at 33 (emphasis and citations omitted).

Although the ALJ concluded at step four that Plaintiff was capable of performing his past relevant work, the ALJ made alternative findings at step five of the sequential evaluation process.  Tr. at 33.  The ALJ considered Plaintiff's RFC, age, education, and work experience, in conjunction with the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 ("Grids"), and determined that "there are other jobs that exist in significant numbers in the national economy that [Plaintiff] also can perform." Tr. at 34 (citations omitted).  Accordingly, the ALJ concluded that Plaintiff "has not been under a disability . . . from February 25, 2011, through the date of th[e] [D]ecision." Tr. at 34 (emphasis and citation omitted).

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g).  Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial evidence standard is met

when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence."  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.  Discussion

Plaintiff makes two arguments before this Court.  Plaintiff first argues the ALJ "failed to articulate good cause for not crediting the opinions of Dr. Casanova, [Plaintiff's] treating internal medicine specialist."  Pl.'s Br. at 8-16.  Plaintiff's second argument essentially challenges the ALJ's credibility finding as it relates to Plaintiff's upper extremity limitations, complaints of pain, and mental impairment symptoms.  Id. at 16-21.  A discussion follows.

### A. Medical Opinion (Issue One)

Plaintiff submits that he had been treating with Dr. Casanova intermittently since April 2007, that the doctor's opinions were based upon Plaintiff's complicated medical history, and that the doctor's opinions should have been afforded substantial weight.  Id. at 8-9.  In response, Defendant argues that the ALJ properly considered Dr. Casanova's opinions, but

gave them little weight as the intermittent and conservative treatment rendered by Dr. Casanova undermined the disabling limitations opined by the doctor.  Def.'s Mem. at 7.

### 1. Applicable Law

The Regulations establish a "hierarchy" among medical opinions[3] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)).  The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization."  20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician or psychiatrist,[4] the Regulations instruct ALJs how to properly weigh such a medical opinion.  See 20 C.F.R. § 404.1527©.  Because treating

---

[3]     "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

[4]     A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition.  See 20 C.F.R. § 404.1502.

physicians or psychiatrists "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. <u>Id.</u> When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). <u>Id.</u>

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records. <u>Phillips</u>, 357 F.3d at 1240-41; <u>see also</u> <u>Edwards v. Sullivan</u>, 937 F.2d 580, 583-84 (11th Cir. 1991); <u>Schnorr v. Bowen</u>, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence). An examining physician's opinion, on the other hand, is not entitled to deference. <u>See</u> <u>McSwain v. Bowen</u>, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing <u>Gibson v. Heckler</u>, 779 F.2d 619, 623 (11th Cir. 1986)); <u>see also</u> <u>Crawford</u>, 363 F.3d at 1160 (citation omitted).

An ALJ is required to consider every medical opinion.  <u>See</u> 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive").  While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," <u>Oldham</u>, 660 F.2d at 1084 (citation omitted); <u>see also</u> 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," <u>Winschel v. Comm'r of Soc. Sec.</u>, 631 F.3d 1176, 1179 (11th Cir. 2011) (citing <u>Sharfarz v. Bowen</u>, 825 F.2d 278, 279 (11th Cir.1987)); <u>see also</u> <u>Moore v. Barnhart</u>, 405 F.3d 1208, 1212 (11th Cir. 2005); <u>Lewis</u>, 125 F.3d at 1440.  "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence."  <u>Winschel</u>, 631 F.3d at 1179 (quoting <u>Cowart v. Schweiker</u>, 662 F.2d 731, 735 (11th Cir. 1981)).

**2.  Dr. Casanova**

Plaintiff's date of alleged onset of disability is February 25, 2011.  Tr. at 151.  However, Plaintiff's low back problems date back to 1991.  <u>See</u> Tr. at 381.  The first record of treatment with Dr. Casanova is in February 2010.  Tr. at 383.   And as noted by Defendant, Plaintiff saw Dr. Casanova only four times between 2010 and 2012. Def.'s Mem. at 5 (referring to Tr. at 381-84, 413-14, 437-38).  On February 24, 2010, Plaintiff presented with complaints of "[p]ain to the lower lumbar spine radiating down the buttock area."  Tr. at 383.  Plaintiff reported "lock-up" of his "lower middle and lower back for the past week[, but] denie[d] . . . numbness or tingling."  Tr. at 383.  Upon physical exam, Dr. Casanova noted "[p]resence of tightness . . . on the area of the lumbar spine."  Tr. at 384.  Dr. Casanova

-8-

indicated he would "write [Plaintiff] a note to excuse him performing current job duties. . . [and] await the results of the MRI of the [t]horacic and [l]umbar [s]pine" which he ordered. Tr. at 384.  The assessment was noted as "[l]umbalgia" and [l]umbosacral [r]adiculitis."  Tr. at 384.

Plaintiff was seen again by Dr. Casanova on March 15, 2011, with similar complaints of "[p]ain to the lower lumbar spine radiating down both legs."  Tr. at 381.  Dr. Casanova noted "tightness . . . on the area of the lumbar spine."  Tr. at 382.  Plaintiff's strength was noted as "[5/5] in the upper and lower extremities."  Tr. at 382.  Assessment at that time was noted to be "[c]ervical [r]adiculitis," [l]umbosacaral [r]adiculitis," and "[a]nxiety, [g]eneralized disorder."  Tr. at 382.

On June 14, 2011, Dr. Casanova authored a note stating that Plaintiff "can no longer do the line of work he was previously in. [Plaintiff] should avoid operation of heavy machinery or any activity that requires concentration due [to] medications that he is currently on."  Tr. at 397-98.  This note was apparently not written in conjunction with an appointment with Dr. Casanova for treatment.

Plaintiff next saw Dr. Casanova on March 15, 2012, with a complaint of "[p]ain to the lower lumbar spine radiating down both legs. . . . [Plaintiff] described the severity of the injury as severe [and] [t]he timing is sudden onset."  Tr. at 413.  Dr. Casanova noted Plaintiff "[s]uffers from cervical radiculopathy affecting the left upper extremity since 2011; report weakness on the left hand."  Tr. at 413.  However, upon neurological exam, Plaintiff had "[m]otor strength [5/5] in the upper and lower extremities."  Tr. at 414.

Following the March 15, 2012 visit, Dr. Casanova completed on March 28, 2012, a Medical Source Statement Concerning the Nature and Severity of an Individual's Physical Impairment form on behalf of the Plaintiff.  Tr. at 399-404.  Dr. Casanova opined Plaintiff is unable to sit or stand/walk more than two hours in an eight-hour day.  Tr. at 403. Additionally, he limited Plaintiff to lifting rarely less than ten pounds, no stooping, pushing, kneeling, pulling, or bending.  Tr. at 402-03.  Dr. Casanova further indicated Plaintiff is significantly limited in his ability to do repetitive reaching, handling, fingering or lifting.  Tr. at 403.  Fatigue as a side effect of Plaintiff's medication was noted.  Tr. at 401.  Dr. Casanova opined that "[Plaintiff] has a very poor prognosis due to these conditions" and would be expected to be absent from work as a result of his impairments or treatment "[m]ore than 3 times per month."  Tr. at 400.

In October 2012, Dr. Casanova completed a Mental Residual Functional Capacity Form rating Plaintiff's "[m]ental abilities to function independently, appropriately, effectively and on a sustained basis."  Tr. at 416.  For the most part, Dr. Casanova opined that Plaintiff would only have the mental ability to engage in most of the activities outlined on the form about twenty-five percent of the time.  Tr. at 416.  As for interacting with the general public and coworkers and in maintaining socially appropriate behavior, Dr. Casanova opined Plaintiff would only be able to do these activities fifteen percent of the time.  Tr. at 416.

Plaintiff saw Dr. Casanova on November 6, 2012, for among other things, complaints of "[p]ain . . . radiating down both legs . . . [and] located on the neck radiating down both arms (worse on the left side)."  Tr. at 437.  The pain was noted as severe, of constant duration and gradual onset.  Tr. at 437.  Dr. Casanova noted that "[r]ecent MRI of the

Cervical Spine showed multiple areas of disk disease and facet disease. Findings progressively worse when compared to study in 2006." Tr. at 437. Plaintiff's motor strength was indicated as "[5/5] on the right side, [4/5] on the left side [and] [w]eak left hand grip." Tr. at 438. Dr. Casanova commented that Plaintiff's "muscle atrophy identified on the left arm is significant, his left side is weaker." Tr. at 438. Dr. Casanova recommended Plaintiff stay on the current medical regimen. Tr. at 438.

### 3.   Analysis

In discussing Dr. Casanova's opinions, the ALJ stated as follows:

> As for the opinion evidence, Dr. Casanova indicated in a note from June 2011 that [Plaintiff] could no longer engage in line work and he should avoid the operation of heavy machinery or any activity that requires concentration due to the medication he was currently taking. Dr. Casanova indicated in March 2012 that because of [Plaintiff's] back pains he could not sit, stand, or walk for more than two hours in an eight-hour day[.] [Plaintiff] could not sit continuously, and [Plaintiff] could only rarely lift less than ten pounds. [Plaintiff] should use a cane when ambulating and [Plaintiff] should not pull, push, kneel, stoop, or bend. [Plaintiff] was incapable of even low stress jobs and was very fatigued due to medications. [Plaintiff] would likely miss more than three days of work per month. In October 2012, Dr. Casanova opined that [Plaintiff] would be unable to perform due to his mental state at least twenty-five percent of the work-day in many areas. These opinions by Dr. Casanova are given little weight as the medical record shows that [Plaintiff] received inconsistent and intermittent treatment at best. Furthermore, the limitations expressed are not supported by the objective medical evidence which shows relatively stable mild to moderate disc degeneration and stenosis over the last several years. Additionally, Dr. Casanova is a doctor of internal medicine and interpreting mental health capacities and making orthopedic judgment about [Plaintiff's] abilities are largely outside his area of expertise.

Tr. at 33 (citations omitted).

The Regulations generally require that the opinions of examining physicians are given more weight than those of non-examining physicians. See 20 C.F.R. § 404.1527(d)(1), (2), (5)). And, if an ALJ concludes the medical opinion of a treating physician should be given

less than substantial or considerable weight, the ALJ must clearly articulate reasons showing "good cause" for discounting it.  Lewis, 125 F.3d at 1440.

Here, the ALJ considered and discussed the opinions of Dr. Casanova.  In affording this doctor's opinions "little weight," the ALJ articulated his reasons for doing so.  Plaintiff acknowledges that the ALJ provided reasons for discrediting Dr. Casanova's opinions, but he urges that the reasons were inadequate.  Pl.'s Br. at 10.

In discounting Dr. Casanova's opinions, the ALJ referenced Plaintiff's "inconsistent and intermittent treatment."  Tr. at 33.  Additionally, the ALJ noted Plaintiff "has not sought treatment from an orthopedist, surgeon, or back specialist, or sought physical therapy and other conservative modalities in addition to narcotic pain medications."  Tr. at 32.  According to the ALJ, this "suggests that [Plaintiff] is not as limited as alleged."  Tr. at 32.  In that regard, in each of Plaintiff's visits to Dr. Casanova, the recommendation was always the same regarding diet ("Encourage to stay on a balance[d] diet"), medication instructions ("Take medications as prescribed"), and lifestyle comments ("Encourage to walk as tolerated" or "Encourage to stay active as tolerated").  Tr. at 382, 384, 414, 438.  There were no referrals to specialists or physical therapy.

The ALJ also noted that "the limitations expressed are not supported by the objective medical evidence which shows relatively stable mild to moderate disc degeneration and stenosis over the last several years."  Tr. at 33.  Plaintiff argues that his condition did significantly change from 2006 to 2012, and he submits that the ALJ's characterization otherwise is inaccurate.  Pl.'s Br. at 10.  A review of the MRI reports, however, does not support the significant changes suggested by Plaintiff.

The impression from the 2005 lumbar spine MRI revealed "mild stenosis at L3-4 from a diffuse disc bulge and facet joint arthropathy with facet joint hypertrophy also resulting in bilateral moderate to severe foraminal narrowing, worse on the right."  Tr. at 429. Impressions also included "[a]symmetric broad based disc bulges . . . at L4-5 and L5-S1 with bilateral moderate neural foraminal narrowing, worse on the left[;] [s]pondylosis . . . throughout the lumbar spine.  No compression fractures[; and s]evere scoliosis, convex to the left."  Tr. at 431.

The impression of the MRI of the lumbar spine dated March 5, 2007, was "[s]coliosis and degenerative disease with resulting mild stenosis at L3-4.  There is no severe stenosis at any level, and no disc herniation."  Tr. at 314; see also Tr. at 313 ("[s]coliosis and extensive secondary degenerative disease, most severe at L3-4").

The impression of the MRI of the lumbar spine dated October 18, 2012 revealed "[g]eneralized scoliosis and degenerative disease [and] [m]oderate stenosis in the subarticular recesses bilaterally at the L3-4 level."  Tr. 410.  It was noted that there was [n]o herniated dis[c]."  Tr. at 410.

As for the MRIs of the cervical spine, the impression from the April 18, 2006, MRI was as follows:

> 1. Moderate sized disc/osteophyte complex seen right paracentrally at C7-T1[.] This causes moderate canal stenosis as well as moderate to severe right lateral recess stenosis.
> 2. Disc/osteophyte complex seen left paracentrally at C6-7 which causes moderate left lateral recess stenosis.
> 3. Broad-based bulging annulus at C5-6 causing mild canal stenosis and mild left lateral recess stenosis.
> 4.  Bulging annulus eccentric to the left at C3-4 causing mild canal stenosis and mild to moderate left lateral recess stenosis.

Tr. at 433.

The MRI of the cervical spine dated October 17, 2012, revealed the following

impression:

> Multiple areas of dis[c] disease and facet disease. The most severe involving
> the left neck is at the C3-4 level, where there is marked left neuroforaminal
> stenosis and edema of the left C3-4 facet joint. There is significant disease
> identified elsewhere involving both the neural foramina and central canal.
> There is at least moderate left neuroforaminal stenosis also seen at the C5-6,
> C6-7 and C7-T1 levels, though this is less prominent than at the C3-4 level
> discussed above. No cord compression or cord signal abnormality is seen on
> today's exam. These findings have all progressed since the exam dating back
> to 2006.

Tr. at 412.

Although the report of the 2012 cervical MRI noted that the findings have "progressed

since the exam dating back to 2006," Tr. at 412, a comparison of the findings from the 2005,

2007, and 2012 lumbar and cervical spine MRIs referenced above do not necessarily

demonstrate a significant change in Plaintiff's condition warranting greater limitations than

those assessed by the ALJ's RFC. Moreover, simply having a problem or impairment does

not automatically translate into work-related functions that an ALJ must include in an RFC.

See Moore, 405 F.3d at 1213 n.6 (stating that "the mere existence of [some] impairments

does not reveal the extent to which they limit [a plaintiff's] ability to work"); McCruter v.

Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986) (recognizing that the severity of an impairment

"must be measured in terms of its effect upon [a claimant's] ability to work").

Plaintiff's daily activities are also relevant in assessing the ALJ's treatment of Dr.

Casanova's opinions. As the ALJ noted in his Decision, Plaintiff engages in "regular

cleaning, cooking, reading, and personal care within his physical tolerances on a daily and consistent basis." Tr. 30.

Accordingly, the undersigned finds that the ALJ appropriately considered the opinions of Dr. Casanova, along with the other evidence of record, and stated adequate reasons for discounting Dr. Casanova's opinions.

## B. Credibility Finding (Issue Two)

In his second argument, Plaintiff contends that "[t]he ALJ failed to properly explain why he was not crediting [Plaintiff's] upper extremity limitations, despite his diagnosis of cervical radiculopathy, his positive cervical MRI findings, and examination findings including muscle atrophy, weakness, and reduced reflexes." Pl.'s Br. at 16.  Plaintiff goes on to state that he "suffers from impairment in concentration due to the extent of his pain and other symptoms."[5]  Id.   Specifically, Plaintiff claims error in the ALJ's credibility finding related to Plaintiff's complaints of pain, upper extremity limitations, and mental impairment symptoms. Id. at 21.  Defendant responds that "[t]he ALJ properly considered the evidence in the record in assessing the credibility of Plaintiff's subjective complaints, including the medical records, medical source opinions, and Plaintiff's treatment and activities." Def.'s Br. at 11 (citations omitted).

---

[5]      To the extent that Plaintiff may be claiming error in the ALJ not finding a "severe" mental impairment at step two, any such claim has been waived for lack of development.  See, e.g., T.R.C. ex rel. Boyd v. Comm'r, 553 F. App'x 914, 919 (11th Cir. 2014) (citing N.L.R.B. v. McClain of Ga., Inc., 138 F.3d 1418, 1422 (11th Cir. 1998) (stating that "[i]ssues raised in . .  perfunctory manner, without supporting arguments and citation to authorities, are generally deemed . . . waived"))  And, in any event, any error in failing to find an impairment severe at step two would be harmless here given that the ALJ found in favor of Plaintiff at step two.  In this Circuit, "[e]ven if the ALJ erred in not indicating whether [a condition] was a severe impairment, the error [is]  harmless because the ALJ concluded that [the plaintiff] had a severe impairment[] and that finding is all that step two requires." Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 824-25 (11th Cir. 2010) (citing Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1991)).

To establish a disability based on testimony of pain or other subjective symptoms, a claimant must satisfy two parts of a three-part test showing: (1) evidence of any underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged subjective symptoms; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed subjective symptoms. Wilson v. Barnhart, 284 F.3d 1219, 1225 (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (stating that "the standard also applies to complaints of subjective symptoms other than pain")). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.2d at 1223.

"[C]redibility determinations are the province of the ALJ." Moore, 405 F.3d at1212. The ALJ "must articulate explicit and adequate reasons" for finding a claimant "not credible." Wilson, 284 F.3d at 1225. "When evaluating a claimant's subjective symptoms, the ALJ must consider things such as (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1529(c)(3)(I)-(vi)). After considering the claimant's subjective complaints, "the ALJ may reject them as not credible, and that determination will be reviewed for substantial evidence." Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (citing Wilson v. Heckler, 734 F.2d 513, 517 (11th Cir. 1984)). Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but the ALJ found that Plaintiff's "statements

concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible." Tr. at 32.  In his Decision, the ALJ considered the Plaintiff's activities of daily living, finding Plaintiff "indicated engaging in regular cleaning, cooking, reading, and personal care within his physical tolerances on a daily and consistent basis."  Tr. at 30.  Additionally, Plaintiff reported to the Social Security Administration that he is able to drive but sometimes needs a ride due to his medications; he is able to shop for food and basic necessities; and he is able to prepare simple meals.  Tr. at 203-04.

In reaching his credibility finding, the ALJ noted that since Plaintiff's alleged onset date of February 2011, Plaintiff has sought treatment on only a few occasions from his primary care physician, Dr. Casanova, and from the emergency room.  Tr. at 32.  The ALJ stated that "such intermittent and irregular treatment . . . suggests that he is not as limited as alleged." Tr. at 32.  Plaintiff complains that the ALJ should have found greater upper extremity limitations.  Pl.'s Br. at 16-21.  However, a review of the Decision reveals the ALJ considered the medical evidence and Plaintiff's testimony, and the ALJ concluded the limitations were not as limiting as Plaintiff alleged.  Tr. at 30-33.  And, as noted by Defendant, Plaintiff's conservative treatment undermines his allegations of disabling limitations and provides support for the ALJ's credibility determination.  Def.'s Mem. at 12 (citing 20 C.F.R. § 404.1529(c)(3)(iv-v); SSR 96-7p; Wolfe v. Chater, 86 F.3d 1072, 1078 (11th Cir. 1996)).

Thus, the ALJ articulated adequate reasons for finding Plaintiff's statements not entirely credible, and the ALJ's credibility determination is supported by substantial evidence. Accordingly, the ALJ's Decision is due to be affirmed on this issue.

## V.  Conclusion

Based on a thorough review of the administrative transcript, and upon consideration of the respective arguments of the parties, the Court finds that the ALJ's Decision is supported by substantial evidence.

In accordance with the foregoing, it is hereby **ORDERED**:

1.    The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **AFFIRMING** the Commissioner's final decision.

2.    The Clerk is directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on February 29, 2016.

James R. Klindt

**JAMES R. KLINDT**
United States Magistrate Judge

jde
Copies to:
Counsel of record

-18-